[Cite as *State v. Plemons*, 2012-Ohio-5051.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26230 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MICHAEL G. PLEMONS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 04 0853 |

DECISION AND JOURNAL ENTRY

Dated: October 31, 2012

BELFANCE, Judge.

{¶1} Michael Plemons appeals from his convictions for aggravated vehicular assault, failure to stop after an accident, operating a vehicle while under the influence of alcohol or drugs, and a marked lanes violation. For the reasons set forth below, we affirm.

I.

{¶2} Officer Mark Dodez was searching with other law enforcement officers for potential contraband that had been thrown from a vehicle during a pursuit. He was walking on the northbound side of Arlington Road in Springfield Township facing the oncoming traffic when a truck swerved across the center line and hit him. Officer Dodez was flung 30 feet by the impact, sustaining severe injuries. While the other officers rushed to his aid, the truck that had hit him sped away.

{¶3} Later that evening, Deputy Todd Buck was directing traffic at the scene of the accident when he observed a truck attempt to perform a U-turn. Deputy Buck approached the

truck and noticed what he believed to be fresh damage to the front end and hood. Deputy Jason Kline, who had witnessed the accident, recognized the truck as the vehicle that had hit Officer Dodez. Deputy Buck ordered the driver, who was later identified as Mr. Plemons, to get out of the truck. Mr. Plemons complied but was so intoxicated he could barely stand. A breathalyzer test recorded Mr. Plemons' breath-alcohol content as .289.

{¶4}    A jury convicted Mr. Plemons of aggravated vehicular assault, failure to stop after a collision, and two counts of operating a vehicle while intoxicated. The trial court also found him guilty of failing to maintain his lane and sentenced him to an aggregate term of six years in prison.

{¶5}    Mr. Plemons has appealed, raising three assignments of error for our review. For ease of discussion, we have combined his first two assignments of error.

II.

ASSIGNMENT OF ERROR I

APPELLANT'S CONVICTIONS WERE CONTRARY TO THE MANIFEST W[EI]GHT OF THE EVIDENCE.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S CRIMINAL RULE 29 MOTION TO DISMISS THE CHARGES FOLLOWING THE STATE'S CASE AND AT THE CONCLUSION OF THE CASE.

{¶6}    Mr. Plemons argues the trial court erred when it denied his Crim.R. 29 motion because the State had failed to present sufficient evidence he caused Officer Dodez's injuries as a proximate result of driving while intoxicated. Mr. Plemons also argues that his conviction for aggravated vehicular assault was against the manifest weight of the evidence. Because Mr. Plemons limits his arguments in support of his first two assignments of error to his conviction for

aggravated vehicular assault, we limit our analysis accordingly. *See* App.R. 12(A)(2); *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *10 (May 6, 1998).

**Crim.R. 29**

{¶7} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. No. 24769, 2010–Ohio–634, ¶ 33. *See also State v. Morris*, 9th Dist. No. 25519, 2011–Ohio–6594, ¶ 12. In determining whether the evidence presented was sufficient to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 274 (1991). Furthermore:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶8} Mr. Plemons was convicted of violating R.C. 2903.08(A)(1)(a), which provides that "[n]o person, while operating or participating in the operation of a motor vehicle * * * shall cause serious physical harm to another person * * * [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance[.]" R.C. 4511.19 prohibits operating a motor vehicle while under the influence of alcohol or drugs.

{¶9} Deputy Kline testified that he and Officer Dodez responded to a request to search for potential contraband that had been thrown from a car during a pursuit. Deputy Kline and Officer Dodez conferred, and they agreed that Officer Dodez would park in the northbound lane

and Deputy Kline would park in the southbound lane with their flashers on to warn oncoming traffic. According to Deputy Kline, he was returning to his vehicle after the parties had decided to call off the search when he heard the sound of a car hitting something. He turned and saw Officer Dodez sliding across the road and "a large full-size dark-colored pickup truck across the double yellow line."

{¶10} Officer Dodez testified that the last thing he remembered before the accident was standing in the northbound lane of Arlington Road looking for potential contraband that had been thrown from a vehicle during a pursuit. He did not remember being struck by the truck. According to Officer Dodez, he suffered a burst fracture to his vertebrae, broke his arm, and spent 106 days in the hospital. Since the accident, he had mostly been confined to a wheel chair. He testified that his understanding of his diagnosis was that he would not be able to walk again without assistance.

{¶11} Officer Thomas Hinerman testified that he and Officer Dodez were searching for potential contraband that had been observed being thrown from a car during a police chase. Both officers had parked their cars and left their lights flashing. According to Officer Hinerman, Officer Dodez was on the northbound side of the street when he was struck by the truck. Jerry Lutz testified that he was pulling out of Mash Oil when he saw a truck strike Officer Dodez. According to Mr. Lutz, the truck "didn't hit him dead center, it hit him like just the front corner of the truck, driver's side corner * * *." Mr. Lutz also testified that Officer Dodez was across the center line from the truck when he was struck.

{¶12} Deputy Buck testified that he was directing traffic after Officer Dodez had been hit when he observed a truck try and fail to perform a U-turn in the middle of the road. He approached the car and could "observe [a] fresh scrape, kind of drag marks over the top of the

front hood which went over the windshield on top of the vehicle." According to Deputy Buck and Deputy Kline, Deputy Kline recognized the vehicle as the one that had struck Officer Dodez. Deputy Buck testified that he asked the driver, later identified as Mr. Plemons, where he was coming from, to which the driver replied that he was coming from work. However, Deputy Buck was unable to understand the name of the business because of Mr. Plemons' slurred speech.

{¶13} Deputy Buck also testified that he detected an odor of alcohol coming from Mr. Plemons and that Mr. Plemons had great difficulty producing his license when Deputy Buck asked for it. Deputy Buck requested Mr. Plemons to exit the truck at which point the truck lurched forward because Mr. Plemons did not have it in park. The truck moved a second time before Mr. Plemons put it in park and exited. Once out of the truck, Mr. Plemons immediately lost his balance and fell back into the truck. According to Trooper Bouthan Saengsiphahn, Mr. Plemons could not perform the walk-and-turn test because he could not maintain his balance. Trooper Saengsiphahn administered a breathalyzer test, and Mr. Plemons' breath-alcohol level was .289

{¶14} Officer Dodez was hospitalized for over three months and is unable to walk without assistance. Multiple witnesses testified that Mr. Plemons crossed the center line when he hit Officer Dodez, and Deputy Buck and Trooper Saengsiphahn testified that Mr. Plemons demonstrated severe signs of intoxication. Furthermore, Mr. Plemons' breath-alcohol level was more than three times the legal limit. *See* R.C. 4511.19(A)(1)(d). When viewed in the light most favorable to the State, there was sufficient evidence for the jury to find that Mr. Plemons caused serious physical harm to Officer Dodez as a proximate result of his operating a vehicle while intoxicated. Accordingly, the trial court did not err when it denied his Crim.R. 29 motion.

**Manifest Weight of the Evidence**

{¶15}  In reviewing a challenge to the weight of the evidence, the appellate court:

[m]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶16}  Mr. Plemons argues that his conviction for aggravated vehicular assault was against the manifest weight of the evidence because it was too dark to see Officer Dodez and there was insufficient evidence to establish that his driving was impaired.  Essentially, Mr. Plemons argues that Officer Dodez's injuries were a result of the road conditions, not his intoxication.

{¶17}  Deputy Kline, Officer Hinerman, Officer Dodez, and Mr. Lutz all testified that it was dusk when Mr. Plemons hit Officer Dodez.  They all agreed that it was not yet quite dark and that Officer Dodez was visible.  More importantly, however, all of them testified that Officer Dodez was on the northbound side of Arlington Road and that Mr. Plemons was on the southbound side.  The witnesses all agreed that Mr. Plemons had to cross the center-line to strike Officer Dodez.  In other words, based on the witnesses' testimony, even assuming Officer Dodez could not be seen, Mr. Plemons would not have hit him had he not drifted left of center.

{¶18}  Regarding Mr. Plemons' argument that the evidence did not establish his impairment, we reiterate that Trooper Saengsiphahn testified that the results of the breathalyzer test indicated that Mr. Plemons' breath-alcohol level was .289, more than three times the legal limit.  Furthermore, Trooper Saengsiphahn and Deputy Buck both testified that Mr. Plemons had trouble standing or walking and that he smelled of alcohol.  Deputy Buck also testified that Mr.

Plemons had attempted and failed to perform a U-turn prior to Deputy Buck stopping his truck, that he had slurred speech, and that he had had difficulty removing his driver's license from his wallet. If believed, this testimony could support a finding that Mr. Plemons was driving impaired.

{¶19} After a thorough review of the record, we cannot say that the jury lost its way and committed a manifest miscarriage of justice when it found Mr. Plemons had violated R.C. 2903.08(A)(1)(a). There was ample testimony that could support a finding of operating a vehicle while impaired. Furthermore, all of the witnesses to the actual accident testified that Mr. Plemons had to cross the center line in order to hit Officer Dodez. Based on this evidence in this case, the jury could readily conclude that Mr. Plemons caused Officer Dodez's injuries as a proximate result of driving while intoxicated. Accordingly, Mr. Plemons' conviction for aggravated vehicular assault is not against the manifest weight of the evidence.

{¶20} Mr. Plemons' first and second assignments of error are overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT BY IMPOSING MORE THAN THE MINIMUM SENTENCE AND BY IMPOSING AN IMPROPER SENTENCE.

{¶21} Mr. Plemons argues in his third assignment of error that his sentences should be reversed because the trial court did not ask him if he wished to make a statement as required by Crim.R. 32(A)(1). He also argues that the trial court failed to consider R.C. 2929.11 and 2929.12 when it sentenced him.

**Crim.R. 32(A)(1)**

{¶22} Crim.R. 32(A)(1) provides that, "[a]t the time of imposing sentence, the court shall * * * [a]fford counsel an opportunity to speak on behalf of the defendant and address the

defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." Mr. Plemons essentially argues that, notwithstanding the fact that the trial court allowed him to speak at length prior to imposing sentence, it failed to comply with Crim.R. 32(A)(1) because it asked his attorney if he wished to give a statement rather than asking him directly.

{¶23} The clear purpose of Crim.R. 32(A)(1) is to allow a defendant to address the court prior to it imposing sentence. Under these facts, it is clear that Mr. Plemons was given that opportunity. Thus, even assuming that the trial court speaking with his counsel before allowing Mr. Plemons to speak constituted error, that error did not affect his substantial rights and, therefore, was harmless. *See* Crim.R. 52(A).

**Sentences**

{¶24} Mr. Plemons makes the very limited argument that the trial court erred by failing to consider R.C. 2929.11 and 2929.12 when it sentenced him, and we confine our analysis accordingly. *See* App.R. 12(A)(2). *See also Cardone*, 1998 WL 224934, *8.

{¶25} A plurality of the Supreme Court of Ohio held that appellate courts should implement a two-step process when reviewing a felony sentence. *State v. Kalish*, 120 Ohio St.3d 23, 2008–Ohio–4912, ¶ 26. The Court stated:

> First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard.

*Id*.

{¶26} R.C. 2929.11 sets forth the overriding purposes of felony sentencing, and R.C. 2929.12 sets forth factors for that the trial court must consider during sentencing. Even if "the

trial court does not put on the record its consideration of R.C. 2929.11 and 2929.12, it is presumed that the trial court gave proper consideration to those statutes." *Kalish* at ¶ 18, fn. 4. Regardless, despite Mr. Plemons' contention to the contrary, the record indicates that the trial court did consider R.C. 2929.11 and 2929.12.

{¶27} In the trial court's sentencing entry, the trial court noted that it considered R.C. 2929.11 and R.C. 2929.12. Furthermore, at the sentencing hearing, the trial court told Mr. Plemons that "it is this Court's job not only to think about you and your life and your problems, but also to think about our community and the importance of it being safe and to try to provide some justice for what has happened here in this case." *See* R.C. 2929.11(A)-(B). The trial court also discussed the harm suffered by Officer Dodez as well as Mr. Plemons' previous OVI convictions and his failure to get help. *See* R.C. 2929.11(B), 2929.12(B)(2), and 2929.12(D)(4).

{¶28} It is clear from the record in this case that the trial court considered R.C. 2929.11 and 2929.12 when it sentenced Mr. Plemons, and, thus, Mr. Plemons' argument to the contrary is without merit. Accordingly, his third assignment of error is overruled.

III.

{¶29} Mr. Plemons' assignments of error are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

LEONARD J. BREIDING, II, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.