[Cite as *State v. McQuistan*, 2018-Ohio-539.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No.     17CA0007-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KEIR MCQUISTAN | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.     16CR0075 |

DECISION AND JOURNAL ENTRY

Dated: February 12, 2018

CARR, Judge.

{¶1} Defendant-Appellant, Keir McQuistan, appeals from his convictions in the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} On the evening of February 13, 2016, McQuistan struck a family's car from behind while traveling east on Greenwich Road. The family's five-year-old son suffered multiple skull fractures as a result of the accident and had to undergo emergency surgery. When police officers spoke with McQuistan at the scene, they found that his eyes were red and glassy, he smelled strongly of alcohol, and he had slurred speech. They also found that he was unsteady on his feet and largely unresponsive to their questioning. After McQuistan refused to engage in any field sobriety testing, the police arrested him.

{¶3} A grand jury indicted McQuistan on one count of aggravated vehicular assault and one count of vehicular assault. McQuistan filed a motion to suppress, alleging that he was

arrested without probable cause. Following a suppression hearing, the trial court denied his motion, and the matter proceeded to a bench trial. The court found McQuistan guilty on both counts and scheduled the matter for sentencing.

{¶4} The morning of his scheduled sentencing hearing, McQuistan filed a motion for new trial. The court postponed the sentencing hearing to consider the motion and the State's response thereto, but ultimately denied the motion. The court found McQuistan's offenses to be allied offenses of similar import, and the State elected to have him sentenced on the aggravated vehicular assault count. The court sentenced McQuistan to three years in prison.

{¶5} McQuistan now appeals from his convictions and raises four assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN OVERRULING KEIR MCQUISTAN'S MOTION TO SUPPRESS. SERGEANT DUNBAR LACKED PROBABLE CAUSE TO ARREST THE DRIVER FOR OPERATING A VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL.

{¶6} In his first assignment of error, McQuistan argues that the trial court erred by denying his motion to suppress. Specifically, he maintains that he was arrested in the absence of probable cause. We disagree.

{¶7} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as

true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶8} An officer has probable cause to arrest an individual for impaired driving if, "at the time of arrest, the officer had sufficient facts derived from a reasonably trustworthy source to cause a prudent person to believe the suspect was driving under the influence." *State v. Hopp*, 9th Dist. Summit No. 28095, 2016-Ohio-8027, ¶ 8. "This inquiry requires consideration of the totality of the circumstances known to the officer at the time of arrest." *State v. Rogers*, 9th Dist. Wayne No. 16AP0014, 2017-Ohio-357, ¶ 9. The fact that a driver caused an accident or exhibited an abnormal reaction response may provide evidence of impairment. *See State v. Peters*, 9th Dist. Wayne No. 08CA0009, 2008-Ohio-6940, ¶ 6, quoting *State v. Stephenson*, 4th Dist. Lawrence No. 05CA30, 2006-Ohio-2563, ¶ 21 ("'A driver * * * is considered 'under the influence' of alcohol when his 'physical and mental ability to act and react are altered from the normal because of the consumption of alcohol.'"). The State also may rely "'on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired.'" *State v. Slone*, 9th Dist. Medina No. 04CA0103-M, 2005-Ohio-3325, ¶ 9, quoting *State v. Holland*, 11th Dist. Portage No. 98-P-0066, 1999 Ohio App. LEXIS 6143, *14 (Dec. 17, 1999). "'Virtually any lay witness, without special qualifications, may testify as to whether or not an individual is intoxicated.'" *State v. Zentner*, 9th Dist. Wayne No. 02CA0040, 2003-Ohio-2352, ¶ 19, quoting *State v. Delong*, 5th Dist. Fairfield No. 02CA35, 2002-Ohio-5289, ¶ 60.

{¶9} The trial court found that Ohio State Highway Patrol Sergeant Alan Dunbar spoke with McQuistan after he struck a car from behind while its driver waited to turn left. The court

found that the trooper detected a strong odor of alcohol coming from McQuistan's person and observed that he had red, glassy eyes and garbled, slurred speech. The court also found that McQuistan was unsteady on his feet and refused to submit to field sobriety testing. Based on the totality of the circumstances, the court determined that Sergeant Dunbar had probable cause to arrest McQuistan for impaired driving. Consequently, it denied McQuistan's motion to suppress.

{¶10} McQuistan argues that the court erred by denying his motion to suppress because Sergeant Dunbar's testimony did not support a finding of probable cause. He notes that the sergeant never activated his recording equipment to capture any of the observations he allegedly made. Further, he notes that the sergeant failed to document in his report having heard any garbled or slurred speech. According to McQuistan, the sergeant only came to the conclusion that he (McQuistan) had consumed alcohol, not that he was under the influence. He argues that, as a result of the crash, he displayed signs of a concussion, not impairment. He also argues that there was evidence the roads were icy at the time of the accident such that there was a reasonable explanation for his failure to stop.

{¶11} Sergeant Dunbar was the only witness to testify at the suppression hearing. He testified that, during the early evening hours of February 13, 2016, he responded to a two-vehicle accident at the intersection of Greenwich Road and Hubbard Valley Road. He testified that the accident occurred because McQuistan struck a car from behind while its driver was waiting to turn left. Another officer was already on scene when the sergeant arrived and was speaking with McQuistan. The sergeant testified that, when he spoke with McQuistan and asked if he was alright, McQuistan gave "a garbled answer." He noted that McQuistan was emitting a "very strong odor of * * * alcoholic beverage," had red, glassy eyes and slurred speech, and was "a

little uneasy on his feet" as if he had trouble holding still.  He also testified that McQuistan refused to submit to any field sobriety testing.

{¶12}  Sergeant Dunbar admitted that, when completing an Impaired Driver's Report for the Department of Public Safety, he described McQuistan's speech as "[s]lowed and muffled at times" rather than garbled or slurred.  He clarified, however, that he considered muffled speech to be synonymous with slurred speech.  He also confirmed that McQuistan's speech was, in fact, slurred and garbled.  He testified that he arrested McQuistan based on the totality of the circumstances he observed because, given his experience, he knew "what an impaired person smells like, looks like."  He stated that both he and another trooper on scene believed that McQuistan was under the influence.  He also later stated: "My training and experience indicated to me that [McQuistan] had consumed alcohol.  The question was how much which is why we take him back to the post and we test him."

{¶13}  Having reviewed the record, we must conclude that the trial court's factual findings are supported by competent, credible evidence.  *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.  Sergeant Dunbar specifically testified to having observed each one of the factors that the court cited in support of its probable cause determination.  Those factors included that McQuistan smelled strongly of alcohol, had red, glassy eyes and slurred speech, was unsteady on his feet, and refused all sobriety testing.  The sergeant testified that he arrested McQuistan because his appearance and behavior were consistent with that of an intoxicated person.  To the extent that the sergeant did not record his interaction with McQuistan and used different descriptors in his report, the court was in the best position to assess his credibility.  *See id. Accord State v. Napier*, 9th Dist. Wayne No. 11CA0006, 2012-Ohio-394, ¶ 22.  Because the

court's factual findings are based on competent, credible evidence, this Court accepts them as true and applies the law to those findings. *Burnside* at ¶ 8.

**{¶14}** The record supports the conclusion that Sergeant Dunbar had probable cause to arrest McQuistan for impaired driving. First, there was evidence that McQuistan had caused an accident by colliding with another car when its driver was stopped and waiting to turn left. *See Peters*, 2008-Ohio-6940, at ¶ 6, quoting *Stephenson*, 2006-Ohio-2563, at ¶ 21. *Compare Hopp*, 2016-Ohio-8027, at ¶ 11 (probable cause absent where "there was no indication of erratic driving or behavior"). Second, there was evidence that he exhibited a number of physiological factors associated with impairment, including that he smelled strongly of alcohol, had red, glassy eyes and slurred speech, and was unsteady on his feet. *See Slone*, 2005-Ohio-3325, at ¶ 9, quoting *Holland*, 1999 Ohio App. LEXIS 6143, at *14. Third, Sergeant Dunbar testified that both he and another trooper believed, based on the observations they made, that McQuistan was under the influence. *See Zentner*, 2003-Ohio-2352, at ¶ 19, quoting *Delong*, 2002-Ohio-5289, at ¶ 60.

**{¶15}** Even if one or more of the foregoing factors, standing alone, would have been insufficient to establish probable cause, a probable cause analysis requires a court to consider the totality of the circumstances. *Rogers*, 2017-Ohio-357, at ¶ 9. The record here supports the conclusion that, at the time of McQuistan's arrest, Sergeant Dunbar had observed facts sufficient "to cause a prudent person to believe [McQuistan] was driving under the influence." *Hopp* at ¶ 8. Consequently, the trial court did not err by denying the motion to suppress. McQuistan's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT'S JUDGMENT OF GUILTY IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶16} In his second assignment of error, McQuistan argues that his convictions are based on insufficient evidence. Specifically, he argues that the State failed to prove he drove his vehicle while under the influence of alcohol or in a reckless manner. We disagree.

{¶17} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley*, 9th Dist. Summit No. 19600, 2000 Ohio App. LEXIS 969, *3 (Mar. 15, 2000). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

{¶18} A vehicular assault occurs if an individual recklessly causes serious physical harm to another while driving a motor vehicle. R.C. 2903.08(A)(2)(b). Meanwhile, an aggravated vehicular assault occurs if an individual causes serious physical harm to another (1) while driving a motor vehicle, and (2) "[a]s the proximate result of committing a violation of [R.C. 4511.19(A)] * * *." R.C. 2903.08(A)(1)(a). "R.C. 4511.19 prohibits operating a motor vehicle while under the influence of alcohol or drugs." *State v. Plemons*, 9th Dist. Summit No. 26230, 2012-Ohio-5051, ¶ 8. "'A driver * * * is considered 'under the influence' of alcohol when his 'physical and mental ability to act and react are altered from the normal because of the consumption of alcohol.'" *Peters*, 2008-Ohio-6940, at ¶ 6, quoting *Stephenson*, 2006-Ohio-

2563, at ¶ 21. "[T]he [S]tate does not have to prove actual impaired driving; rather, it need only show an impaired driving ability." *Zentner*, 2003-Ohio-2352, at ¶ 19. As noted, to sustain a conviction, the State may rely on a number of "'physiological factors,'" *Slone*, 2005-Ohio-3325, at ¶ 9, quoting *Holland*, 1999 Ohio App. LEXIS 6143, at *14, as well as lay opinion testimony that an individual was intoxicated. *Zentner* at ¶ 19.

{¶19} McQuistan does not dispute that the accident he caused resulted in serious physical harm to one of the occupants of the car he struck. Specifically, the rear seat passenger, who was five years old at the time, suffered a skull fracture and had to undergo emergency surgery. McQuistan's argument is strictly that the State failed to prove he was under the influence of alcohol when he caused the accident. As such, we limit our review to that issue. *See, e.g., State v. Filip*, 9th Dist. Medina No. 16CA0049-M, 2017-Ohio-5622, ¶ 23.

{¶20} The driver of the car that McQuistan struck testified that, on the evening of the accident, he was stopped on Greenwich Road, waiting to make a left-hand turn onto Hubbard Valley Road. His fiancée was seated next to him and his five-year-old son was seated directly behind him. He testified that it was cold that day, but the roads were clear, having been plowed and salted. He estimated that his car remained stationary for between thirty seconds and one minute as he waited for an opportunity to turn. He then briefly noticed headlights in his rearview mirror before a vehicle struck his car from behind and pushed it through the intersection and into a ditch on the other side of Hubbard Valley Road. Both the driver and his fiancée denied hearing any noise resembling tires squealing on the pavement or braking directly before the crash occurred.

{¶21} The driver identified McQuistan as the driver of the vehicle that struck his car. He stated that, while he tended to his family, McQuistan remained in his vehicle. He then saw

McQuistan step out of his vehicle and begin walking towards him. Because McQuistan's vehicle was located several hundred feet away, the driver also began walking so as to meet McQuistan halfway. The driver testified that McQuistan had his cell phone out while walking and was looking at it rather than making eye contact. As the two converged, McQuistan immediately demanded to know why the driver had been stopped in the middle of the road. The driver testified that it was difficult to understand McQuistan because his speech was slurred. He also testified that McQuistan's lack of concern angered him, so he responded in disbelief and may have used an expletive. According to the driver, McQuistan then mumbled something, turned away, walked back to the rear passenger bumper of his vehicle, and urinated on the side of the road. The driver testified that McQuistan's actions, in conjunction with his slurred speech, caused him to believe that McQuistan was impaired.

{¶22} Ohio State Highway Patrol Trooper Aleksander Tot responded to the scene of the accident. He testified that McQuistan was seated in his vehicle when he arrived, having already given his driver's license information to a local officer. Trooper Tot testified that he approached McQuistan's vehicle and asked him what happened. According to the trooper, McQuistan refused to respond or answer any of his questions. He testified that McQuistan had bloodshot and glassy eyes and the odor of an alcoholic beverage was coming from his person. He further testified that McQuistan was unsteady on his feet, as evidenced by the fact that he bumped into Trooper Tot as the two walked to his cruiser. Though Trooper Tot asked McQuistan to perform field sobriety testing, McQuistan refused to look at the stimulus for the horizontal gaze nystagmus test or participate in any of the other tests. Trooper Tot testified that, instead, McQuistan looked directly at him and "stare[d] like he was going to fight."

{¶23} With regard to the accident itself, Trooper Tot testified that he documented the scene and inspected the damage to both vehicles. He stated that both vehicles were damaged at their center points, meaning that McQuistan had struck the driver's car straight on without attempting to swerve or take "any evasive actions to avoid the crash." Likewise, he stated that there was no evidence of any tire marks on the road that might have shown an attempt at stopping.

{¶24} Sergeant Dunbar testified that he arrived at the scene of the accident after Trooper Tot and conferred with him on arrival. He then attempted to speak with McQuistan, but only received a "slurred garbled" response. Sergeant Dunbar testified that McQuistan had red, glassy eyes and that there was a strong odor of alcohol coming from his person. He stated that McQuistan refused to engage in field sobriety testing or answer when asked if he had consumed any alcohol. After McQuistan was arrested and transported back to the station, he also refused to take a breath test, stating that he "did not trust the machine." Sergeant Dunbar testified that McQuistan's speech was still slurred at that time. Though he refused to take the breath test, McQuistan ultimately admitted to having consumed one beer earlier that day. Sergeant Dunbar testified that McQuistan's speech, appearance, and behavior were all consistent with impairment.

{¶25} As to the road conditions that day, Sergeant Dunbar testified that he had no difficulty controlling his cruiser when traveling on Greenwich Road. He testified that there was snow on the sides of the road, but the road itself was clear. Moreover, photographs that the State produced at trial showed the road was clear of snow. There was testimony that Greenwich Road runs straight for a considerable distance and has a slight downhill grade as it intersects with Hubbard Valley Road. Accordingly, there was evidence that there were no curves in the road or hills that would have obstructed McQuistan's line of sight.

{¶26} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded that the State proved McQuistan was impaired at the time of the accident. *See Jenks*, 61 Ohio St.3d at 279. More than one witness testified that he appeared to be impaired. *See Zentner*, 2003-Ohio-2352, at ¶ 19. There was evidence that his eyes were red and glassy, he was unsteady on his feet, he had slurred speech, he smelled strongly of alcohol, and he admitted consuming at least one alcoholic beverage. *See State v. Hess*, 9th Dist. Wayne No. 12CA0064, 2013-Ohio-4268, ¶ 15. There was evidence that he refused to submit to a breath test. *Filip*, 2017-Ohio-5622, at ¶ 39 (refusal to submit to sobriety testing "could also be viewed as probative of [] impairment"); *State v. Collins*, 9th Dist. Summit No. 23662, 2007-Ohio-5674, ¶ 15. Additionally, there was evidence that he failed to react before striking the other driver's car, despite having a clear line of sight. *See State v. Thomas*, 9th Dist. Summit No. 18881, 1999 Ohio App. LEXIS 489, *12 (Feb. 17, 1999). Based on all of the foregoing evidence, a rational trier of fact could have concluded that McQuistan caused an accident as a proximate result of operating his vehicle while under the influence of alcohol. As such, we must conclude that his conviction for aggravated vehicular assault is based on sufficient evidence. *See* R.C. 2903.08(A)(1)(a) and 4511.19(A). Likewise, we must conclude that his conviction for vehicular assault is based on sufficient evidence, as driving while impaired also constitutes reckless behavior. *See State v. Wamsley*, 9th Dist. Summit No. 19484, 2000 Ohio App. LEXIS 272, *12-13 (Feb. 2, 2000). McQuistan's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT'S JUDGMENT OF GUILTY IS AGAINST THE MANIFEST WEIGHT OF EVIDENCE.

{¶27} In his third assignment of error, McQuistan argues that his convictions are against the manifest weight of the evidence. Specifically, he argues that the trier of fact lost its way

when it concluded that he was impaired rather than concussed as a result of the accident that occurred. We disagree.

{¶28} When considering whether a conviction is against the manifest weight of the evidence, this Court

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases in which the evidence weighs heavily against the conviction. *Otten* at 340.

{¶29} McQuistan argues that his convictions are against the weight of the evidence because he did not drive while impaired. According to McQuistan, he sustained a serious concussion when his airbag deployed and, as a result, exhibited symptoms consistent with that condition. He notes that the other driver was biased against him and lacked credibility, as he had filed a civil suit, had prior convictions, and, when pressed, changed his testimony about seeing McQuistan urinating on his truck. He also notes that the paramedic who examined him directly after the accident did not detect any odor of alcohol on his person.

{¶30} Scott Vallant, a paramedic for Wadsworth, testified that he spoke with McQuistan for a few minutes while responding to the scene of the accident. Vallant stated that he did not

notice any odor of alcohol when talking with McQuistan. He clarified, however, that he had his face in the wind during their entire exchange. He testified that he never brought McQuistan into his rig or examined him because McQuistan resisted and was "pretty emphatic [] that he didn't want treatment."

{¶31} The driver that McQuistan struck readily admitted that he had several prior felony convictions and that his family had filed a civil suit against McQuistan in connection with the accident. Yet, he explained that his son had been seriously injured as a result of the accident, underwent emergency surgery, was hospitalized for several days, and was still suffering from lasting complications. As to his testimony about McQuistan urinating, the driver initially testified that McQuistan "stepped towards the passenger rear bumper of his truck and start[ed] urinating right on the side of his truck." On cross-examination, he then explained that he meant McQuistan urinated on the ground by the side of his truck, not directly onto the truck itself. He admitted that he could not actually see McQuistan urinating from his point of view, but testified that McQuistan's stance was consistent with him urinating. He testified that he watched McQuistan the entire time and there was no doubt in his mind that he was urinating. Accordingly, the record does not support McQuistan's claim that the driver changed his testimony on that point.

{¶32} Trooper Tot stated that McQuistan never complained of any injury and never requested medical attention. Indeed, he testified that he specifically asked McQuistan whether he needed medical attention and McQuistan refused to answer. Trooper Tot stated that he had experience with individuals who had been injured in airbag deployments and McQuistan's behavior was distinctly different than that of those individuals. He testified that McQuistan did

not appear to have difficulty understanding him; he just refused to cooperate and glared angrily at him during their encounter.

{¶33} Both McQuistan's daughter and his wife testified in his defense. His daughter testified that she visited her parents the day after the accident and McQuistan was acting unusually. Specifically, he was watching television at a low volume with the curtains drawn and only had limited interaction with his grandchildren. McQuistan's daughter denied that McQuistan drank alcohol on a regular basis, but admitted that she no longer lived at her parents' house.

{¶34} McQuistan's wife testified that the weather was bad the day of the accident, but McQuistan left in the morning to go skiing. She testified that she began to worry when he was not home by 6:00 p.m., so she tried texting him. She initially testified that she never spoke to McQuistan and did not learn of his whereabouts until Sergeant Dunbar phoned about his arrest. On cross-examination, however, the State presented her with phone records, evidencing that several calls took place between her and McQuistan's cell phone shortly after the accident occurred. McQuistan's wife then recalled that she briefly spoke to McQuistan at those times. She claimed, however, that the signal was poor and she largely could not understand what he was saying.

{¶35} According to McQuistan's wife, McQuistan was visibly shaken when she came to get him at the police station and did not seem to understand what was happening. She denied that his speech was slurred or that she could smell alcohol on his person. She testified that, once home, he was nauseated, had a headache, was sensitive to light, and had difficulty remembering much about the accident. Nevertheless, she admitted that he did not seek medical care for three days, which was the same day that he was due in court. She testified that McQuistan ultimately

saw several physicians about his symptoms because they continued to occur. She testified that she was not directly involved in his medical appointments, but, after he had an MRI, he told her he had been diagnosed with "severe brain trauma."

{¶36} Dr. Matthew Finneran, a family medicine practitioner, saw McQuistan three days after the accident. He testified that McQuistan reported driving slowly on an icy road and striking another car because a crest in the road prevented him from seeing the car and stopping in time. Dr. Finneran ultimately diagnosed McQuistan with a concussion, but admitted that he did so based on McQuistan's self-reported symptoms. He testified that all of McQuistan's exams were normal, but that he later referred him to a neurologist because he continued to report having symptoms. According to Dr. Finneran, all of the tests the neurologist performed, including an MRI, produced normal and/or clinically insignificant results. He also confirmed that, per his medical records, McQuistan consumed two bottles of wine per week.

{¶37} McQuistan testified in his own defense. He stated that, on the day of the crash, he drove south to go skiing for the day. He described how he skied until lunch, stopped for a bowl of chili and one 20-ounce beer, and then skied again until it was time to go home. According to McQuistan, the weather conditions worsened the closer he got to home. He reported that the conditions on Greenwich Road were snowy and prevented him from seeing the other driver's car at a distance. He stated that he did not see the driver's taillights until the last minute, at which point he braked "in a hard, aggressive manner." After that, his airbag deployed and he believed he was rendered unconscious for up to 25 minutes.

{¶38} McQuistan testified that he could recall very little about the aftermath of the crash. He stated that he could not remember what he said to the other driver or the police. He also stated that he could not remember whether he urinated near his truck, but testified that doing

so would be out of character for him.  He could not recall Sergeant Dunbar explaining the breath test to him or refusing the test.  McQuistan testified that he only drank one beer that day and that the accident occurred as a result of the weather and road conditions.

{¶39}  McQuistan conceded that there was no crest or hill on Greenwich Road to obstruct his view of the other driver's car.  Though he may have described a crest or hill blocking his view when telling Dr. Finneran about the accident, McQuistan insisted that he merely offered the doctor "a scenario" and that the "relevant portions" of his description were correct.  He also insisted that doctors told him he had experienced significant brain trauma, despite the fact that all of his test results were normal and/or clinically insignificant.  He testified that he experienced painful symptoms immediately following the accident and had difficulty concentrating and functioning that weekend.  Nevertheless, he admitted that he never sought emergency medical attention.  He also admitted that, the day after the accident, he went through the process of shaving off his beard.

{¶40}  Having reviewed the record, we cannot conclude that the trier of fact lost its way when it concluded that McQuistan was impaired at the time of the accident.  The court was essentially presented with two conflicting versions of the events.  Though McQuistan claimed that he only drank one beer at lunch that day, the court heard a substantial amount of testimony tending to show that he was under the influence of alcohol at the time of the crash.  "This Court has repeatedly held that the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly."  *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15.  Moreover, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chooses to believe the State's witnesses rather than the defendant's version of the events."  *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-

Ohio-3189, ¶ 16. McQuistan has not shown that this is the exceptional case where the evidence weighs heavily against his convictions. *See Otten*, 33 Ohio App.3d at 340. Consequently, we reject his manifest weight argument and overrule his third assignment of error.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED MR. MCQUISTAN'S MOTION FOR A NEW TRIAL WITHOUT A HEARING AND REFUSED TO RECUSE ITSELF FROM THE CASE[.]

{¶41} In his fourth assignment of error, McQuistan argues that the trial judge abused her discretion when she denied his motion for new trial without holding a hearing and refused to recuse herself. We disagree.

{¶42} Crim.R. 33(A) allows a defendant to move for a new trial when his substantial rights have been materially affected. "By its terms, [the rule] does not require a hearing on a motion for a new trial, and this Court has consistently held that the decision to conduct a hearing is one that is entrusted to the discretion of the trial court." *State v. Jalowiec*, 9th Dist. Lorain No. 14CA010548, 2015-Ohio-5042, ¶ 20. Likewise, a trial court's ultimate decision to grant or deny a motion for new trial is one this Court reviews for an abuse of discretion. *State v. Holmes*, 9th Dist. Lorain No. 05CA008711, 2006-Ohio-1310, ¶ 8. An abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶43} "[E]xcept for the cause of newly discovered evidence," motions for new trial must be filed "within fourteen days after the verdict was rendered." Crim.R. 33(B). A motion based on newly discovered evidence must be filed "within [120] days after the day upon which the verdict was rendered * * *." *Id.*

To warrant the granting of a motion for a new trial based upon newly discovered evidence, the defendant must show that the evidence:

"(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence."

*State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 18, quoting *State v. Petro*, 148 Ohio St. 505 (1947), syllabus.

{¶44} The trial court rendered a verdict in this matter on November 14, 2016. The original sentencing date was then postponed and rescheduled for December 29, 2016. Several minutes before the rescheduled sentencing hearing, McQuistan filed his motion for new trial. His motion neglected to cite any specific provision of Crim.R. 33. Rather, it was based on his having learned, "shortly []after" the November 8th general election, that the trial judge had offered a magistrate's position to the assistant prosecutor who tried this matter. McQuistan argued that he should have been made aware of "the closeness of [the] relationship" between the judge and the assistant prosecutor before trial because it would have impacted his decision to try the matter to the bench instead of a jury. The court once again postponed sentencing so as to rule on his motion.

{¶45} The trial court denied McQuistan's motion without holding a hearing. The court determined that the motion was untimely because it was filed more than fourteen days after the verdict and McQuistan had failed to specify when exactly he had discovered the information on which it was based. Further, the court found that McQuistan was not entitled to a new trial on the basis of newly discovered evidence because he failed to prove that there existed a strong probability that the information he discovered would have changed the result in this matter. The court noted that it had based its decision, not on any special relationship with the assistant prosecutor, but on the wealth of evidence that the State had produced at trial.

{¶46} McQuistan concedes that he filed his motion for new trial more than fourteen days after the verdict was rendered, but argues that it was timely filed based on newly discovered evidence. *See* Crim.R. 33(B). According to McQuistan, he only learned about the court's decision to hire the assistant prosecutor after the issuance of the verdict and the court's decision to do so "at the very least created an appearance of impropriety * * *." He argues that the judge erred by concluding that his motion was untimely, by denying it without first holding a hearing, and by not recusing herself once it became clear that her impartiality might be reasonably questioned.

{¶47} Initially, this Court notes that McQuistan never asked for a hearing on his motion for new trial. His request for relief was limited to a request for a new trial and, when he later appeared for sentencing, he did not object to the court's denial of his motion in the absence of a hearing. McQuistan has not explained why his failure to request a hearing and his subsequent failure to object did not result in a forfeiture. *See State v. Richardson*, 9th Dist. Lorain No. 16CA011003, 2017-Ohio-8138, ¶ 10. It is well settled that "an appellate court will not consider any error which counsel * * * could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus.

{¶48} Though McQuistan now asserts that he moved for a new trial based on newly discovered evidence, he neglected to even cite Crim.R. 33 in his motion, much less explain how it was timely under subsection (B). He also neglected to explain how the information he discovered was material to the actual issues at trial or would have changed the result in this matter in light of the evidence the State produced. *See Tolliver*, 2017-Ohio-4214, at ¶ 18, quoting *Petro*, 148 Ohio St. 505 at syllabus. The information he discovered did not pertain to the

evidence at trial, but to the alleged partiality of the judge. On appeal, he specifically argues that the trial judge erred by not recusing herself. Yet, "[m]atters of disqualification of trial judges lie within the exclusive jurisdiction of the chief justice of the Supreme Court of Ohio and [her] designees." *State v. O'Neal*, 9th Dist. Medina No. 06CA0056-M, 2008-Ohio-1325, ¶ 15. This Court has no authority to review recusal decisions. *Id. See also State v. Smith*, 9th Dist. Lorain No. 98CA007169, 2000 Ohio App. LEXIS 972, *6-7 (Mar. 15, 2000).

{¶49} Upon review, this Court cannot conclude that the trial court abused its discretion when it denied McQuistan's motion for new trial. McQuistan failed to demonstrate that his motion was timely filed under Crim.R. 33(B). He also failed to show that there existed a strong probability that the information he discovered would have changed the result in this matter, given the evidence the State produced at trial. *See Tolliver* at ¶ 18, quoting *Petro* at syllabus. To the extent he argued below and maintains on appeal that the trial judge ought to have recused herself, his remedy was to file an affidavit of disqualification with the Supreme Court. *See O'Neal* at ¶ 16. Accordingly, McQuistan's fourth assignment of error is overruled.

III.

{¶50} McQuistan's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR

APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and MICHAEL McNAMARA, Assistant Prosecuting Attorney, for Appellee.