[Cite as *State v. Massarelli*, 2019-Ohio-3220.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| STATE OF OHIO | | C.A. No. 18CA0049-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOSHUA L. MASSARELLI | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 17 CR 0756 |

DECISION AND JOURNAL ENTRY

Dated: August 12, 2019

CARR, Judge.

{¶1} Defendant-Appellant Joshua Massarelli appeals from the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} In the early morning hours of August 24, 2017, Massarelli forced in the door of a room at the Legacy Inn in Wadsworth where the mother of two of his children ("J.C.") was staying with her boyfriend and drug dealer ("the victim"). A struggle between the victim and Massarelli ensued. During the struggle, Massarelli took out a knife and cut the victim's neck. The victim was able to get away and fled out of the room. Massarelli followed and chased the victim around the victim's truck. The victim ran back into the room and held the door closed as Massarelli tried to reenter. Massarelli then went out to the victim's truck, punctured two of the tires, and left the area.

{¶3} Massarelli was located several miles away in Westfield. The vehicle he had been driving was parked off of the driveway under a tree. Massarelli initially fled from police but was ultimately arrested.

{¶4} In September 2017, an indictment was filed alleging that Massarelli committed aggravated burglary in violation of R.C. 2911.11(A)(1) and felonious assault in violation of R.C. 2903.11(A)(2). The matter proceeded to a jury trial. The jury found Massarelli guilty of both counts, and the trial court sentenced him to an aggregate term of six years.

{¶5} Massarelli has appealed, raising four assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN CONVICTING JOSHUA MASSARELLI [] OF AGGRAVATED BURGLARY AND FELONIOUS ASSAULT AS SUCH FINDINGS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶6} Massarelli argues in his first assignment of error that his convictions for aggravated burglary and felonious assault were against the manifest weight of the evidence. Essentially, Massarelli asserts that the victim and J.C. were not credible witnesses and they had reasons to be biased against him. Massarelli also points to the lack of fingerprint and blood evidence against him and argues that the victim's injuries were present before the assault.

{¶7} Massarelli was found guilty of aggravated burglary in violation of R.C. 2911.11(A)(1) and felonious assault in violation of R.C. 2903.11(A)(2).

{¶8} In reviewing whether a conviction is against the weight of the evidence,

an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶9} R.C. 2911.11(A)(1) states:

No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another[.]

Whereas, R.C. 2903.11(A)(2) provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance[.]"

{¶10} J.C. had a tumultuous and complicated romantic life. J.C.'s relationship with Massarelli began in 2012 and continued into early 2017. In December 2016, the victim, who was an old friend of J.C. began to stay with J.C. and Massarelli. In January 2017, J.C. and Massarelli had a domestic dispute that resulted in a no-contact order being issued against Massarelli. Also around that time, J.C.'s husband was being released from prison. In February 2017, the victim and J.C. became romantically involved. Around August of 2017, J.C. contacted the prosecutor to have the no-contact order lifted as she sought to reconcile with Massarelli prior to leaving for rehab.

{¶11} J.C. did not go to rehab. Instead, in late August 2017, the victim rented J.C. a room at the Legacy Inn where she could stay and get ready for work, as she had just started a

new job and had been evicted from her home in Rittman. J.C. maintained that she, Massarelli, and the victim all used methamphetamines together on a regular, daily basis.

{¶12} On the morning of August 23, 2017, Massarelli picked J.C. up at the hotel and took her to work. And while he was supposed to take her home from work, instead, J.C. called the victim and asked him to pick her up, which he did. J.C. admitted to using methamphetamines when she got back to the room. The victim admitted to using marijuana but denied extensive use of methamphetamines. J.C. invited Massarelli over that night to get high, but Massarelli declined.

{¶13} Around 10:00 p.m., Massarelli stopped at their hotel room. According to the victim, he threw some candy and macaroni at the door of the room and then texted J.C. to say that he had done it.

{¶14} The room where J.C. and the victim were staying had two twin beds. In the early morning of August 24, 2017, J.C. was engaged in sexual intercourse with the victim on the bed farthest from the door when the door was forced open. J.C. then saw Massarelli who screamed, "You lied to me. Why did you lie to me?" J.C. testified she believed that the statements were directed at her.

{¶15} The victim testified that Massarelli jumped towards them and the victim went towards Massarelli. The victim noticed a silver object in Massarelli's hand. The two collided and ended up on one of the beds. The victim was just trying to hold Massarelli and get him to calm down. Then, the victim heard the sound of a folding knife clicking and felt it go down the back of his skull and down the back of his neck. There was testimony that such a weapon was capable of inflicting death or great bodily harm. The wound, however, did not require stitches.

{¶16} While J.C. did not see a knife, during the struggle, she heard the victim call out to her and say, "Call the cops. He stabbed me. For real, babe, he stabbed me." J.C. then proceeded to call the police. The call was placed at about 2:40 a.m.

{¶17} The victim, who was naked, was able to get free and exit the motel room. Massarelli followed him and chased the victim around the victim's truck. The victim ran back into the motel room and held the door closed as Massarelli tried to reenter it. The victim and J.C. then heard a hissing sound. The victim observed Massarelli stabbing one of the tires. They would come to discover that two of the victim's truck's tires had been punctured.

{¶18} While the victim had a significant injury prior to the attack, he testified that Massarelli did cut him and pointed out the injury Massarelli caused in a photograph that was shown to the jury and admitted into evidence.

{¶19} When police responded to the motel, Officer Tim Reed of the Wadsworth Police Department immediately noticed that the doorjamb was cracked and the strike plate was missing. In addition, the edge of the door, where the handle was, was also split. Officer Reed also noticed the laceration on the victim's neck that was still bleeding. The victim appeared "worked up[]" and J.C. appeared scared and nervous. Officer Reed documented that two of the tires on the victim's truck were damaged. Officer Reed also found small amounts of what he believed to be blood on one of the tires and the door to the room. No blood or fingerprints were sent for testing.

{¶20} Police located the vehicle Massarelli was known to drive around 3:15 a.m. in a private yard in Westfield. The vehicle was parked behind a tree, which would have obscured the vehicle from those passing along the road. At first, police did not see Massarelli. Then as they began to proceed down the driveway, they noticed Massarelli headed in their direction. When officers started running towards Massarelli and telling him to stop, he began to run the other

way. Police then lost sight of Massarelli. After a while, Massarelli indicated his location and was then arrested. Police were unable to locate the keys to the vehicle or the knife; however, a banking receipt with Massarelli's name was found in the vehicle. Massarelli told one of the officers that he was trying to get his "baby momma" back. Massarelli stated that "she lied[,]" which he asserted caused him to spend ten days in jail.

{¶21} Once Massarelli was in custody, Officer Reed spoke to him and asked him about what happened. Massarelli maintained that the victim had kicked in the door at the motel. Massarelli indicated that the victim was a drug dealer and had pulled a knife and a gun on Massarelli. When Massarelli was asked why he pulled off into a random driveway, he would not answer. Massarelli became upset, began yelling about what a terrible person the victim was, and started referencing past events.

{¶22} Officer Heath Studer of the Wadsworth Police Department investigated Massarelli's cell phone records. Officer Studer discovered that at 2:39 a.m. Massarelli had called J.C. and the victim's shared phone. Officer Studer testified that the call "hit off the [cell] tower" that was a couple miles away from the Legacy Inn. Officer Studer averred that that record was consistent with Massarelli being in the area of the Legacy Inn at the time.

{¶23} Officer Studer also looked at surveillance video from the nearby KFC. Around 2:38 a.m. on the morning of the attack, the camera depicts two individuals running from the west end of the Legacy Inn property towards the area of the main office. Due to the distance, few details are visible on the video. However, when Officer Reed arrived shortly after that time, the two did not avoid the police and neither matched the description of the suspect given to police. The suspect was described as wearing a white shirt and plaid shorts. When Massarelli was arrested, he was found wearing a burgundy shirt and plaid shorts.

**{¶24}** Additionally, portions of Massarelli's jail phone calls were played for the jury. Therein, Massarelli tells an unidentified person that the victim came at Massarelli with a knife and Massarelli showed the victim how use it. Massarelli indicated that he was trying to get his children's mom back. While Massarelli tried to argue at trial that the incident being discussed in the jail calls was not the August 24, 2017 assault, and, instead, referred to a prior altercation, there was no testimony that the prior altercation involved a knife. The victim denied that the prior altercation involved a knife.

**{¶25}** After a thorough and independent review of the record, we cannot say that the jury's verdicts are against the manifest weight of the evidence. The jury was aware of J.C.'s and the victim's drug use and was also aware of the complicated relationships involved in this matter. Nonetheless, there was testimony that Massarelli forced his way into the motel room while exclaiming that J.C. had lied. There was also evidence that Massarelli then cut the victim with a knife, punctured two of the tires on the victim's truck, and fled the scene. When Massarelli was finally confronted by authorities in Westfield, he also initially fled. *See State v. McCormick*, 9th Dist. Summit No. 29121, 2019-Ohio-2204, ¶ 19 (noting that a jury can consider flight as evidence of consciousness of guilt). This Court has repeatedly held that the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. McQuistan*, 9th Dist. Medina No. 17CA0007-M, 2018-Ohio-539, ¶ 40, quoting *State v. Johnson*, 9th Dist. Summit No. 25161, 2011-Ohio-3296, ¶ 15. We cannot say that the jury's resolution of credibility issues in this matter was unreasonable. Nor can we say that the absence of blood or fingerprint testing in this case necessitates the conclusion that the verdicts were against the manifest weight of the evidence. The jury had other evidence from which it could reasonably conclude that Massarelli had committed aggravated burglary and felonious assault.

{¶26}  Massarelli's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND JOSHUA MASSARELLI[] GUILTY OF AGGRAVATED BURGLARY AND FELONIOUS ASSAULT BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT SUCH FINDINGS.

{¶27}  Massarelli argues in his second assignment of error that there was insufficient evidence to find him guilty of aggravated burglary and felonious assault. Massarelli reiterates his previous arguments and asserts that there was insufficient evidence a knife was used or physical harm was inflicted. In addition, he again points to the lack of physical evidence in support of his claim that there was insufficient evidence to support the verdicts.

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶28}  First, we note that the State was not required to demonstrate that the victim was actually physically harmed. Instead, the section of aggravated burglary at issue requires that "[t]he offender inflicts, or attempts or threatens to inflict physical harm[.]" R.C. 2911.11(A)(1). The section concerning felonious assault states that the offender shall not knowingly "[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon[.]" R.C. 2903.11(A)(2). Thus, Massarelli is mistaken as what the State was required to demonstrate. Moreover, the victim testified that Massarelli cut the victim with a knife. Viewing the evidence, more fully discussed above, in a light most favorable to the prosecution, Massarelli has not demonstrated that the verdicts were based upon insufficient evidence.

**{¶29}** Massarelli's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

JOSHUA MASSARELLI [] WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS WHEN HIS TRIAL COUNSEL FAILED TO OBJECT TO TESTIMONY AT TRIAL THAT WAS CLEARLY HEARSAY.

**{¶30}** Massarelli argues in his third assignment of error that he was denied effective assistance of trial counsel because trial counsel failed to object at trial to statements that were hearsay. While Massarelli states in a conclusory manner in the body of his brief that trial counsel was also ineffective for failing to file a motion to suppress, such argument is speculative and undeveloped. Moreover, it is outside the scope of his stated assignment of error, which is limited to trial counsel's failure to object to hearsay at trial. Thus, it will not be addressed. *See State v. Martynowski*, 9th Dist. Lorain No. 17CA011078, 2017-Ohio-9299, ¶ 18.

**{¶31}** In order to prevail on a claim of ineffective assistance of counsel, Massarelli must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, Massarelli must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, Massarelli must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith* at 534.

**{¶32}** Initially, we note that Massarelli has failed to point us to places in the record where the alleged hearsay statements were made. *See* App.R. 16(A)(7). Additionally, we did locate at least one place in the transcript where trial counsel did object to J.C. attempting to testify about what Massarelli said. That objection was overruled.

{¶33} Finally, it appears that the statements Massarelli argues should have been objected to as hearsay were not in fact hearsay. Evid.R. 801(D)(2) states provides that a statement is not hearsay if:

> The statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity, or (b) a statement of which the party has manifested an adoption or belief in its truth, or (c) a statement by a person authorized by the party to make a statement concerning the subject, or (d) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.

{¶34} Here, the statements at issue all seem to be Massarelli's own statements. Massarelli alleges that he made these statements subsequent to his arrest and prior to trial, "not only to law enforcement, but [also] to family members during recorded phone conversations while he was in jail." In particular, Massarelli asserts, without pointing to places in the record in support of his assertion, that Officer Reed's testimony was comprised in "large part" of statements "purportedly made" by Massarelli "shortly after his arrest[.]" Massarelli has not explained why these statements would not constitute admissions under Evid.R. 801(D)(2)(a). Thus, Massarelli has not demonstrated trial counsel's performance was objectively unreasonable in failing to object to those statements as hearsay.

{¶35} Massarelli's third assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

THE CUMULATIVE EFFECT OF THE TRIAL COURT'S ERRORS DENIED MR. MASSARELLI A FAIR TRIAL.

{¶36} Massarelli argues in his fourth assignment of error that the cumulative errors of the trial court denied him a fair trial.

{¶37} "To support a claim of cumulative error, there must be multiple instances of harmless error. [However, b]ecause this Court did not find multiple instances of error, the cumulative error doctrine does not apply." (Internal quotations and citations omitted.) *State v. Haywood*, 9th Dist. Summit No. 28040, 2017-Ohio-8299, ¶ 68.

{¶38} Massarelli's fourth assignment of error is overruled.

### III.

{¶39} Massarelli's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
CONCUR.


<u>APPEARANCES</u>:

KENNETH C. STAIDUHAR, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.