**[Cite as *State v. Miller*, 2020-Ohio-1209.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    29469 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| NEIL Z. MILLER | BARBERTON MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    TRC-1807736 |

DECISION AND JOURNAL ENTRY

Dated: March 31, 2020

CARR, Judge.

{¶1}   Defendant-Appellant, Neil Miller, appeals from the judgment of the Barberton Municipal Court.  This Court affirms in part and reverses in part.

I.

{¶2}   Miller was brought to Akron General Hospital for treatment following a traffic accident that occurred on Interstate 77 sometime after 2:00 a.m.  An eyewitness to the accident ("the eyewitness") was traveling southbound on the highway when a vehicle passed him at a high rate of speed, changed lanes, lost control, hit the guardrail, and briefly "came up on its side" before regaining contact with the ground and grinding to a halt.  The eyewitness quickly pulled over to check on the vehicle's occupant(s), but found it empty.  He noticed that the vehicle's windows had shattered, however, and soon heard noises coming from its far side.  He then found Miller lying on the ground next to the vehicle.

{¶3} The eyewitness discovered that Miller was injured and disoriented, but pleasant and vocal. He noted that Miller slurred as he spoke and smelled like he had been drinking. Additionally, he heard Miller say that he had consumed a few drinks at a bar after work. The eyewitness remained on scene until the police arrived. He noted that, once the police began asking Miller questions, Miller lost his pleasant demeanor and became belligerent.

{¶4} An Ohio State Highway Patrol Trooper interviewed Miller at the hospital. Miller's physical condition made it impossible for him to undergo any field sobriety testing and he refused to submit to a chemical test. Nevertheless, the trooper was able to observe that Miller was slurring his words, was emitting a strong odor of alcohol, and was engaging in belligerent behavior with the hospital staff. His observations and other information he received relevant to the investigation led him to conclude that Miller was impaired.

{¶5} Miller was cited for operating a vehicle under the influence of alcohol ("OVI"), failure to control, and failure to wear a seat belt. The latter two charges were ultimately dismissed, and a jury found Miller guilty of OVI. The court sentenced him to jail time, a fine, and a license suspension.

{¶6} Miller now appeals from his conviction and raises six assignments of error for review. To facilitate our analysis, this Court rearranges and consolidates several of his assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED BY FAILING TO GRANT MR. MILLER'S CRIM. R. 29 MOTION FOR ACQUITTAL.

## ASSIGNMENT OF ERROR II

THE JURY'S VERDICT WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF MR. MILLER'S CONSTITUTIONAL RIGHTS.

{¶7}    In his first and second assignments of error, Miller argues that he was entitled to an acquittal on his OVI count, as that count is based on insufficient evidence.  We disagree.

{¶8}    Crim.R. 29(A) provides:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.  The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction.  *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

{¶9}    "No person shall operate any vehicle * * * if, at the time of the operation, * * * [t]he person is under the influence of alcohol * * *."  R.C. 4511.19(A)(1)(a).  To secure an OVI conviction, the State must show a driver had "an impaired driving ability."  *State v. Zentner*, 9th Dist. Wayne No. 02CA0040, 2003-Ohio-2352, ¶ 19.  "The fact that a driver caused an accident * * * may provide evidence of impairment."  *State v. McQuistan*, 9th Dist. Medina No. 17CA0007-M, 2018-Ohio-539, ¶ 8.  Further, "the [S]tate can rely on physiological factors (e.g., odor of

alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired." *State v. Peters*, 9th Dist. Wayne No. 08CA0009, 2008-Ohio-6940, ¶ 5, quoting *State v. Slone*, 9th Dist. Medina No. 04CA0103-M, 2005-Ohio-3325, ¶ 9, quoting *State v. Holland*, 11th Dist. Portage No. 98-P-0066, 1999 WL 1313665, *5 (Dec. 17, 1999). "[V]irtually any lay witness, without special qualifications, may testify as to whether or not an individual is intoxicated." *Zentner* at ¶ 19, quoting *State v. Delong*, 5th Dist. Fairfield No. 02 CA 35, 2002-Ohio-5289, ¶ 60.

{¶10} The eyewitness and his fiancée were traveling southbound in the center lane of Interstate 77 when another vehicle passed them on the passenger's side of their car. The eyewitness testified that he was traveling at about 70-75 mph, but the vehicle "passed [him] * * * like [he] was standing still." He watched as it approached an SUV about five to six car lengths ahead, changed lanes, and lost control. The vehicle spun, jerked to the right, hit the guardrail, and briefly "came up on its side" before regaining contact with the ground. By that time, the eyewitness had pulled even with the vehicle, so he quickly stopped at the side of the road and ran back to the vehicle to check on its occupant(s).

{¶11} The eyewitness found the vehicle empty. He stated that all of its windows had shattered and its radio was blaring, but he was able to hear noises coming from its side. He then walked in that direction and found a man lying on the ground next to the vehicle beneath the guardrail. The man was bleeding, but conscious, and his pants were caught on a part of the guardrail. According to the eyewitness, the man did not know where he was or what had happened, so he told the man that he had "wrecked [his] car." The eyewitness then called 911 and waited with the man until help arrived. He testified that he could tell the man had been drinking because he smelled like alcohol and was slurring his words. He also later heard the man say that he had

consumed a few drinks at a bar after work. The eyewitness testified that the man was pleasant at first, but became belligerent when the police arrived and "want[ed] nothing to do with the cops."

{¶12} The eyewitness never asked the man for his name, and the State never asked him to identify Miller in court as the man that he found. The eyewitness also admitted that he never actually saw who was driving the vehicle that crashed because it was dark outside and it passed him at a high rate of speed. Nevertheless, he testified that the man he found was the only individual he found in the vicinity. He confirmed that he did not see any other individuals inside or around the vehicle.

{¶13} Trooper Nathan Sweazy responded to the accident scene and spoke with the eyewitness, as well as the local officers who had responded to the emergency call. The trooper learned that the vehicle's occupant had already been transported to Akron General Hospital, so he remained on scene to complete a crash report. After completing his investigation on scene, he traveled to the hospital to speak with the man who had been involved in the crash.

{¶14} Trooper Sweazy identified Miller as the man who had been transported from the scene of the accident. After he Mirandized Miller, he asked him questions about the accident and whether he had consumed any alcohol that evening. He testified that Miller was unable to write out a statement or undergo field sobriety testing because his eyes were swollen shut and he had "quite a few injuries." Miller also refused to undergo chemical testing without the advice of an attorney. The trooper testified that Miller would only admit he had consumed two beers that evening. He still smelled like alcohol, however, and the trooper noted that the smell would get stronger whenever Miller spoke even though "it had been quite some time since the crash." He also noted that Miller was slurring his words and, throughout the questioning, kept vacillating

between a calm and agitated demeanor. Further, the trooper observed Miller acting belligerently toward the nursing staff as they treated him.

{¶15} Miller argues that the State failed to prove, beyond a reasonable doubt, that he operated a vehicle while impaired. He notes that no one ever saw him driving or even identified him as the man at the scene of the crash that the eyewitness observed. Though he was treated at the hospital, Miller argues that no one ever linked his injuries to the crash. Further, he argues that most of the indicators of impairment he allegedly exhibited (i.e. slurred speech, belligerence, and confusion) are also indications of a severe head injury. Because there was no evidence that he was impaired or that he operated a vehicle, Miller argues, the State failed to prove impaired driving. Thus, he argues that his OVI conviction is based on insufficient evidence, and the court erred by denying his motion for acquittal on that count.

{¶16} Viewing all the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the State proved, beyond a reasonable doubt, the elements of Miller's conviction. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. As to the issue of identity, the State set forth evidence that Miller was found on the ground directly outside of the vehicle that crashed immediately after it crashed. He was the only individual found in the vicinity, the vehicle's windows were shattered, and he had numerous injuries. Thus, the jury reasonably could have concluded that he was driving the vehicle and was ejected as a result of the crash. *See id.* at paragraph one of the syllabus ("Circumstantial evidence and direct evidence inherently possess the same probative value * * *."). As to the issue of impairment, both the eyewitness and Trooper Sweazy testified that Miller smelled strongly of alcohol, was slurring his speech, and admitted that he had consumed at least a few alcoholic beverages. *See Peters*, 2008-Ohio-6940, at ¶ 5. Those physiological factors served as evidence of impairment, as did Miller's erratic

driving, the crash that ensued, and the testimony that he appeared disoriented and acted in a belligerent manner. *See McQuistan*, 2018-Ohio-539, at ¶ 26. Finally, the jury heard Trooper Sweazy testify, based on his training and experience, that he believed Miller was intoxicated. *See Zentner*, 2003-Ohio-2352, at ¶ 19, quoting *Delong*, 2002-Ohio-5289, at ¶ 60. Upon review, Miller has not shown that the State produced insufficient evidence in support of his conviction. As such, his first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR IV

THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} In his fourth assignment of error, Miller argues that his OVI conviction is against the manifest weight of the evidence. We disagree.

{¶18} In reviewing whether a conviction is against the weight of the evidence,

an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶19} Miller relied on cross-examination at trial and chose not to testify in his own defense. He argues that the jury lost its way when it chose to believe that he drove while impaired. Again, he notes that there was no testimony directly linking him to the operation of a vehicle or

placing him at the scene of the accident that the eyewitness observed. According to Miller, the evidence only showed that he sustained a severe head injury and exhibited symptoms as a result of that injury.

{¶20} Having reviewed the record, we cannot conclude that the jury clearly lost its way when it found Miller guilty of OVI. *See Otten* at 340. "Although [much of] the evidence at trial was circumstantial, it is not—as noted above—of less probative value." *State v. Trivett*, 9th Dist. Medina Nos. 17CA0032-M, 17CA0049-M, 2018-Ohio-3926, ¶ 34. The State produced circumstantial evidence that Miller was the driver of the vehicle that the eyewitness saw, as he was found lying on the ground next to it immediately after the accident and was the only person the eyewitness found in the vicinity. Further, the State produced circumstantial evidence that Miller was impaired, as he drove erratically, caused an accident, admitted that he had consumed alcohol, and exhibited several signs of impairment (e.g., a strong odor of alcohol, slurred speech, and belligerent behavior). This Court has repeatedly held that it "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Barger*, 9th Dist. Medina No. 14CA0074-M, 2016-Ohio-443, ¶ 29. The record reflects that this is not the exceptional case where the evidence weighs heavily against Miller's conviction. *See Otten* at 340. Accordingly, his fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE COURT ERRED IN ADMITTING MEDICAL RECORDS WITHOUT TESTIMONY.

## ASSIGNMENT OF ERROR V

THE COURT ERRED IN ADMITTING THE MEDICAL RECORDS IN VIOLATION OF MR. MILLER'S FOURTH AMENDMENT RIGHTS AGAINST UNREASONABLE SEARCH AND SEIZURE.

{¶21} In his third and fifth assignments of error, Miller argues that the trial court erred when it admitted certain medical records. He argues that the court should have excluded those records because they were objectionable on several foundational and evidentiary grounds. Further, he argues that their admission violated his rights under the Confrontation Clause and the Fourth Amendment.

{¶22} The record reflects that the State sought to admit medical records from Miller's hospital stay because they purportedly contained statements he made against his interest. Following lengthy discussions about the admissibility of those records, the court admitted them as self-authenticating documents. The records were then marked as an exhibit and provided to the jury. Yet, upon review, they have not been made a part of the record on appeal. Indeed, the appellate record is devoid of any exhibits entered at the trial court. The notice of the filing of the record that the clerk's office issued in this case specifically indicated that the following items were filed herein: "RECORD-TRANSCRIPT OF DOCKET & JOURNAL ENTRIES FILED WITH TWO TRANSCRIPTS *AND NO EXHIBITS*, ATTORNEY NOTIFIED[.]" (Emphasis added.) Thus, the clerk notified Miller that no exhibits were filed as part of the record on appeal.

{¶23} The appellate record must contain "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court * * *." App.R. 9(A)(1). "It is the appellant's responsibility to ensure that the record on appeal contains all matters necessary to allow this Court to resolve the issues on appeal." *State v. Farnsworth*, 9th Dist. Medina No. 15CA0038-M, 2016-Ohio-7919, ¶ 16. "This duty falls to the appellant because the appellant has the burden of establishing error in the trial court." *State v. Dalton*, 9th Dist. Lorain No. 09CA009589, 2009-Ohio-6910, ¶ 25. "[I]n the absence of portions of the record necessary for our

review, we must presume regularity in the trial court's proceedings and affirm its ruling." *State v. Jalwan*, 9th Dist. Medina No. 09CA0065-M, 2010-Ohio-3001, ¶ 12.

{¶24} Without Miller's medical records, this Court cannot say whether the trial court committed prejudicial error in its admissibility determination. It was Miller's burden, as the appellant, to ensure that the record on appeal was complete. *See Farnsworth* at ¶ 16; *Dalton* at ¶ 25. Because the record does not contain all the matters necessary to allow us to resolve Miller's arguments, we have no choice but to presume regularity in the proceedings and affirm the trial court's judgment. *See State v. Filip*, 9th Dist. Medina No. 16CA0049-M, 2017-Ohio-5622, ¶ 16; *Jalwan* at ¶ 12. As such, Miller's third and fifth assignments of error are overruled.

## ASSIGNMENT OF ERROR VI

THE COURT ERRED IN ASSESSING COSTS ON THE SEAT BELT CHARGE.

{¶25} In his sixth assignment of error, Miller argues that the trial court erred when it assessed costs against him on his charge of failing to wear a seatbelt. The State concedes the error, and, upon review, we agree that the trial court erred.

{¶26} In its sentencing entry, the court wrote that Miller's seatbelt count was "dismissed upon motion of Prosecutor at Defendant's costs." Yet, the record reflects that his seatbelt charge was dismissed by way of a Crim.R. 29(A) motion, not upon motion of the prosecutor. Costs cannot be assessed against a defendant who has been acquitted. *Cuyahoga Falls v. Coup-Peterson*, 124 Ohio App.3d 716, 717-718 (9th Dist.1997). Thus, it was error for the trial court to assess costs against Miller on his seatbelt charge. Miller's sixth assignment of error is sustained, the judgment of the trial court is reversed in that respect, and Miller is not responsible for the court costs arising from his seatbelt charge. *See State v. Cochran*, 9th Dist. Summit No. 19286, 1999 WL 241226, *2 (Apr. 14, 1999).

11

## III.

**{¶27}** Miller's sixth assignment of error is sustained. His remaining assignments of error are overruled. The judgment of the Barberton Municipal Court is affirmed in part and reversed in part, as Miller is not responsible for the court costs arising from his seatbelt charge.

Judgment affirmed in part,
and reversed in part.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

PATRICK P. LENEGHAN, JR., Attorney at Law, for Appellant.

JENNIFER A. ROBERTS, Prosecuting Attorney, for Appellee.