[Cite as *N. Ridgeville v. Standen*, 2026-Ohio-2234.]

STATE OF OHIO            )                IN THE COURT OF APPEALS
                         )ss:             NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN         )

CITY OF NORTH RIDGEVILLE                  C.A. No.      25CA012304

    Appellant

    v.                                    APPEAL FROM JUDGMENT
                                          ENTERED IN THE
MARK STANDEN, et al.                      COURT OF COMMON PLEAS
                                          COUNTY OF LORAIN, OHIO
    Appellee                              CASE No.      23-PC-00050

DECISION AND JOURNAL ENTRY

Dated: June 15, 2026

FLAGG LANZINGER, Presiding Judge.

{¶1}    The City of North Ridgeville (the "City") appeals from the judgment of the Lorain County Court of Common Pleas, Probate Division.  For the following reasons, this Court affirms.

I.

{¶2}    In 2002, Mark Standen purchased 2.336 net acres of land on the northwest corner of the intersection of Chestnut Ridge Road and State Route 83 in the City.  Mark purchased the land as an investment property.  Mark later executed a warranty deed conveying ownership of the land to himself and his brother, Matthew.

{¶3}    In 2021, the City passed an ordinance allowing for the construction of a roundabout at the intersection of Chestnut Ridge Road and State Route 83.  In the fall of 2022, the City's appraiser met with Mark to discuss the City's purchase of 0.788 net acres of the Standens' land for the City's roundabout.  Mark told the City's appraiser that he and Matthew were not interested in selling the land.

{¶4} In the summer of 2023, the City offered the Standens $236,400 for 0.788 net acres of their land. The Standens rejected the City's offer. On November 29, 2023, the City filed a "Petition to Appropriate Property and Fix Compensation" with the Lorain County Court of Common Pleas, Probate Division. Pursuant to R.C. 163.06, the City took immediate possession of 0.788 net acres of the Standens' land for its roundabout project. The matter then proceeded to a trial for a jury to determine: (1) the compensation the City owed to the Standens for the take; and (2) the damages, if any, to the residue (i.e., 1.548 net acres) as a result of the take.

{¶5} At trial, each party presented expert testimony from an appraiser. The City also presented testimony from its engineer, and Mark testified on behalf of the Standens. This Court will briefly summarize the testimony presented at trial.

{¶6} Mark testified as to the value of the land before the take, the value of the take, and the damages to the residue as a result of the take. Mark testified the total value of the land before the take was between $800,000 and $850,000. Mark explained "there's not other property with frontage on a major state route and a busy road like we have, you can't hardly find a comparable for it, because you can't find a piece of property like that." Mark explained the City took the "very prime piece" and the "heart" of their land.

{¶7} Mark also explained the plans the City provided for the roundabout project showed no access (i.e., no curb cut or driveway) to the residue on either Chestnut Ridge Road or State Route 83, which affected the value of the residue. Mark explained the City's engineer told him he could get access on the residue, but he (Mark) would have to go through the standard application process with the City's planning commission to do so. Mark expressed doubt as to whether the City would allow access points to the residue, which he would have to pursue at his own expense. Mark opined the damages to the residue were between $350,000 to $400,000 because the value of

the residue was now "probably about zero." Mark explained he did not know anyone who would buy the residue and that the City "totally ruined the property." When asked what the total amount of damages he believed he and his brother sustained as a result of the take, Mark opined it was between $800,000 and $850,000.

{¶8} The Standens' appraiser and the City's appraiser agreed that the value of the land before the take was $300,000 per acre, totaling $700,800 ($300,000 x 2.336 net acres). Thus, the appraisers agreed that the value of the take was $236,400 ($300,000 x 0.788 net acres). The appraisers disagreed, however, on the damages to the residue (1.548 net acres) as a result of the take.

{¶9} According to the City's appraiser, the residue sustained no damages because "the only thing that changed was the size." The City's appraiser acknowledged his opinion was based on the fact he "was led to believe there would be two access points," one on State Route 83 and one on Chestnut Ridge Road. The City's appraiser explained that, while the plans the City submitted for the roundabout did not include access via a curb cut or driveway on the residue, his understanding was this was because the City did not want to dictate the location of those access points. The City's appraiser also acknowledged he did not know the formal process the Standens would have to pursue to allow curb cuts or a driveway on the residue. The City's appraiser opined the value of the residue after the take was $464,400 ($300,000 x 1.548 net acres), meaning there were "zero damages" to the residue as a result of the take.

{¶10} The Standens' appraiser agreed that the value of the land before the take was $300,000 per acre, totaling $700,800 ($300,000 x 2.336 net acres). Unlike the City's appraiser, the Standens' appraiser opined the residue was damaged by the take due to the configuration of the residue after the take and "no likelihood of any access onto State Route 83." The Standens'

appraiser testified that an access point on State Route 83 was "not feasible" and it was "obvious to [him] that there was never going to be any access permitted on [State Route] 83. It was just . . . too close to the roundabout." The Standens' appraiser then acknowledged his appraisal of the residue assumed the Standens would have an access point on Chestnut Ridge Road.

{¶11} The Standens' appraiser opined that the value of the residue after the take was $100,000 per acre, meaning the value of the residue after the take was $154,800 ($100,000 x 1.548 net acres). The Standens' appraiser then opined: "the total compensation to the Standens would be $546,000, which includes damages to the residue of $309,400[1], and the value of the part taken at $236,400."

{¶12} The City's engineer testified that the plans for the roundabout did not include access points on the residue. The City's engineer acknowledged the Standens would have to apply to the City's planning commission to request a curb cut or driveway, which involves administrative review by multiple City departments and requires ultimate approval from the Ohio Department of Transportation ("ODOT"). The City's engineer testified the City's engineering department would "have a say on whether or not a driveway or curb cut could be added to the plan[,]" and that she was unaware of instances where the City denied property owners their requested access.

{¶13} After the parties rested, the trial court instructed the jury. In doing so, the trial court instructed, in part:

> The jury in an appropriation case acts as an assessing body in determining the amount of compensation and the amount of damages, if any, to the residue resulting from the severance of the parts taken. As to the amounts of compensation and damages, if any, to the residue, there is no burden of proof on either party as there might be in other civil lawsuits.
>
> Compensation is payment for the fair market value of the property taken.

---

[1] The Standens' appraiser's export report reflects "$309,600[,]" in "Indicated Damages[.]" Later on the same page, it reflects "$309,400" in "Damages[.]"

Damages are the loss in value of the residue of the property, because of its severance from the property taken.

Compensation and damages, if any, to the residue, will be determined as of November 29, 2023, which the Court has determined to be the date of take.

{¶14} The verdict form reflects the jury's compensation and damages award as follows:

1. **Compensation** for the permanent take      $ 236,400

2. **Damages** to the residue (remaining property), if any, attributable to the taking      $ 464,400

3. **Total award** for the appropriation      $ 700,800

(Emphasis in original.)

{¶15} After the trial, the City moved for judgment notwithstanding the verdict. The City argued that the jury ignored the evidence presented at trial, including the testimony of both appraisers, when it awarded the Standens an amount equal to the value of the entire land before the take. The City also filed two motions for a new trial. In its first motion, the City argued a new trial was warranted because the jury's verdict was outside the range of both expert opinions as to the damages owed to the Standens, and the jury ignored the trial court's instructions on calculating damages. In its second motion, the City argued a new trial was warranted based on newly discovered evidence, that is, revisions to the plans/drawings for the roundabout. The trial court denied the City's motions. The City now appeals, raising six assignments of error for this Court's review.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO ALLOW APPELLANT FROM INTRODUCING THE INDEPENDENT APPRAISAL REVIEW FROM ODOT.**

{¶16} In its first assignment of error, the City argues the trial court abused its discretion when it refused to allow the City to introduce an independent appraisal review from ODOT at trial. According to the City, the independent appraisal review is a document ODOT requires an independent appraiser to complete, which states the appraiser's report complies with ODOT's requirements for appraisal reports. For the following reasons, this Court overrules the City's first assignment of error.

{¶17} This Court cannot reach the merits of the City's assigned error because the independent appraisal review from ODOT is not contained in the record on appeal. A review of the trial transcript indicates the parties discussed the document, which the City identified as exhibit 5, prior to the start of trial. The City's counsel argued the document was admissible because it was a public record. The Standens' counsel disagreed, arguing it constituted inadmissible hearsay. The trial court agreed with the Standens' counsel and concluded the City could not introduce the document at trial.

{¶18} After the trial court determined the document constituted inadmissible hearsay, the City's counsel asked the trial court if he should "introduce the exhibits that you are not allowing in . . . for purposes of review[.]" The trial court asked the court reporter if she usually accepted those exhibits, and the court reporter responded that she "would usually take them and put the[m] in a separate envelope." The trial court asked whether that needed to be done right then, and the court reporter responded that it did not. The trial court then stated: "We'll just make sure we get to that. At the end of the production of the case, when the exhibits are going to be presented to the jury, we will go over the exhibits and parcel them all out."

{¶19} There is no indication in the record that the City's counsel proffered exhibit 5 during trial, and there is no separate envelope in the record before this Court that contains exhibit

5. As this Court has explained, "[i]t is the appellant's responsibility to ensure that the record on appeal contains all matters necessary to allow this Court to resolve the issues on appeal." *State v. Miller*, 2020-Ohio-1209, ¶ 23 (9th Dist.), quoting *State v. Farnsworth*, 2016-Ohio-7919, ¶ 16 (9th Dist.). "This duty falls to the appellant because the appellant has the burden of establishing error in the trial court." *Miller* at ¶ 23, quoting *State v. Dalton*, 2009-Ohio-6910, ¶ 25 (9th Dist.). "[I]n the absence of portions of the record necessary for our review, we must presume regularity in the trial court's proceedings and affirm its ruling." (Alteration in original.) *Miller* at ¶ 23, quoting *State v. Jalwan*, 2010-Ohio-3001, ¶ 12 (9th Dist.).

{¶20} Because exhibit 5 is not contained in the record on appeal, this Court must presume regularity in the proceedings and affirm the trial court's judgment. *Miller* at ¶ 24; *accord State v. Ventura*, 2024-Ohio-498, ¶ 22 (9th Dist.). The City's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO ALLOW THE CITY ENGINEER TO TESTIFY AS TO UPCOMING REVISIONS IN THE ODOT PLANS/DRAWINGS.**

{¶21} In its second assignment of error, the City argues the trial court erred when it refused to allow the City's engineer to discuss upcoming revisions to the initial plans/drawings for the roundabout, which included access points on State Route 83 and Chestnut Ridge Road. The City argues these upcoming revisions were relevant to the amount of damages, if any, the residue sustained as a result of the take. For the following reasons, this Court overrules the City's second assignment of error.

{¶22} "A trial court has broad discretion in determining whether to admit or exclude evidence." *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 66 (1991). "Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand." *Id.* An abuse of discretion

is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶23} At trial, the City's counsel began questioning the City's engineer about upcoming changes to the plans/drawings for the roundabout. The City's engineer explained the City "recently decided" to make certain changes and instructed its engineer of record to make those changes. The Standens' counsel objected, stating the City never provided the Standens with revised plans/drawings. The trial court then held a discussion with counsel outside the presence of the jury.

{¶24} During the discussion, the Standens' counsel reiterated he did not receive revised plans/drawings prior to the start of trial and argued that any changes did not affect the value of the land as of the date of the take (November 29, 2023). The trial court acknowledged the parties' expert appraisers based their reports on the original plans. The trial court also indicated the jury was tasked with determining the value of the land as of the date of the take. The trial court ultimately prohibited the City's counsel from continuing to question the City's appraiser about upcoming changes to the plans/drawings. The trial court then instructed the jury to disregard the testimony the City already elicited about changes to the plans/drawings.

{¶25} This Court concludes the trial court did not abuse its discretion when it prohibited the City from questioning its engineer about upcoming changes to the plans/drawings. The jury in this case was tasked with determining the compensation and damages, if any, the City owed the Standens as of the date of the take. *See Dir. of Hwys. v. Olrich*, 5 Ohio St.2d 70, 72 (1966) (holding the value of property is determined "as of the time of the taking" if the "appropriator has taken

possession prior thereto . . . ."); *Ohio Turnpike Comm. v. Likowski*, 2002-Ohio-7322, ¶ 6 (9th Dist.) (same). The parties did not dispute that the original plans did not include access on State Route 83 or Chestnut Ridge Road, or that their respective experts based their opinions on those plans. Nor did the parties dispute the date of the take was November 29, 2023. Accordingly, this Court concludes the trial court did not abuse its discretion when it prohibited the City from presenting testimony regarding upcoming changes to the plans/drawings. The City's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

**THE JURY VERDICT IS BASED UPON INSUFFICIENT EVIDENCE.**

{¶26} In its third assignment of error, the City argues the jury's verdict was based on insufficient evidence because the jury completely disregarded the testimony of both experts. The City also argues that no rational explanation exists as to why the jury returned a verdict in the amount of the entire pre-take value of the land instead of the value of the take plus damages, if any, to the residue. This Court disagrees.

{¶27} "In Ohio, it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive." *Magnum Steel & Trading, L.L.C. v. Mink*, 2013-Ohio-2431, ¶ 32 (9th Dist.), quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 655 (1994). Here, the jury was required to "assess the compensation for the property appropriated and damages, if any, to the residue, to be paid to the owners." R.C. 163.14(B). "Damage to the residue is measured by the difference between the pre- and postappropriation fair market value of the residue." *Hilliard v. First Indus., L.P.*, 2004-Ohio-5836, ¶ 5 (10th Dist.); *accord Wray v. Wessell*, 2016-Ohio-8584, ¶

24 (4th Dist.) (collecting cases). In addition to the expert testimony from the parties' respective appraisers, the jury in this case was entitled to rely on Mark's testimony as to the value of the land. *Smith v. Padgett*, 32 Ohio St.3d 344, 347 (1987) ("Ohio law has long recognized that an owner of either real or personal property is, by virtue of such ownership, competent to testify as to the market value of the property.").

{¶28} As explained above, the City and the Standens' respective appraisers opined that the value of the land prior to the take was $700,800, and that the value of the take was $236,400. The City's appraiser opined that the residue sustained no damages as a result of the take, entitling the Standens to $236,400 in total compensation. The Standens' appraiser opined that the residue sustained $309,600 in damages as a result of the take, entitling the Standens to $546,000 in total compensation.

{¶29} Mark, on the other hand, testified the total value of the land before the take was between $800,000 and $850,000. Mark explained "there's not other property with frontage on a major state route and a busy road like we have, you can't hardly find a comparable for it, because you can't find a piece of property like that." Mark opined the damages to the residue was between $350,000 to $400,000 because the value of the residue was now "probably about zero." Mark explained he did not know anyone who would buy the residue and that the City "totally ruined the property." When asked what the total amount of damages he believed he and his brother suffered as a result of the take, Mark opined it was between $800,000 and $850,000.

{¶30} The jury assessed the total compensation the City owed to the Standens as follows:

| | |
|---|---|
| **Compensation** for the permanent take | $ 236,400 |
| **Damages** to the residue (remaining property), if any, attributable to the taking | $ 464,400 |
| **Total award** for the appropriation | $ 700,800 |

(Emphasis in original.)

{¶31} The record does not support the City's argument that the jury completely disregarded the testimony of both experts and that no rational explanation exists for its verdict. The jury's total award fell between the total compensation the Standens' expert appraiser testified the Standens were entitled to receive ($546,000) and the total compensation Mark testified they were entitled to receive (between $800,000 and $850,000). *See Padgett*, 32 Ohio St.3d at 347 (providing that a property owner is competent to testify as to the market value of the property).

{¶32} Additionally, the parties did not request jury interrogatories. *See* Civ.R. 49(B). Their failure to do so requires this Court speculate as to how the jury reached its damages award in this case, which this Court will not do. *Goodrich Corp. v. Commercial Union Ins. Co.*, 2008-Ohio-3200, ¶ 99 (9th Dist.); *accord 7471 Tyler Blvd., LLC v. Titan Asphalt & Paving, Inc.*, 2020-Ohio-5304, ¶ 171 (11th Dist.) ("The appellate court will not speculate as to the particular damages compensated by the jury award."). "In the absence of interrogatories, an appellate court may not overturn a jury's damage award unless it is apparent from the record that the award was the result of passion or prejudice." *Black v. Stouffer Realty, Inc.*, 2013-Ohio-5723, ¶ 14 (9th Dist.); *accord Orion Mgt., Inc. v. Kaeka*, 2025-Ohio-1047, ¶ 67 (9th Dist.). It is not apparent from the record that the jury's award in this case was the result of passion or prejudice. *See Petryszak v. Greegor*, 2008-Ohio-4776, ¶ 8 (9th Dist.) (acknowledging the size of a verdict, without more, does not prove passion or prejudice). In light of the testimony presented at trial and the lack of jury interrogatories, this Court concludes the City has not established error in this regard. The City's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

**THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶33}** In its fourth assignment of error, the City argues the jury's verdict was against the manifest weight of the evidence. For the following reasons, this Court disagrees.

**{¶34}** "An appellate court conducts the same manifest weight analysis in both criminal and civil cases." (Alteration omitted.) *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist. 2001), quoting *Ray v. Vansickle*, 1998 WL 716930, *1 (9th Dist. Oct. 14, 1998). When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [verdict] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the [verdict]." *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.).

**{¶35}** Initially, this Court notes the City has attempted to incorporate the arguments presented in its third assignment of error into this assignment of error. As this Court has explained, "Appellate Rules 12(A)(2) and 16(A)(7) require an appellant to set forth a separate argument in support of each assigned error." *State v. McKnight*, 2023-Ohio-1933, ¶ 10 (9th Dist.). For this reason, an appellant "cannot 'incorporate the arguments contained in the other assignments of error to support a different assignment of error.'" *Id.*, quoting *State v. Calhoun*, 2021-Ohio-1713, ¶ 24 (9th Dist.). Accordingly, this Court declines to address the City's fourth assignment of error to the extent it requires this Court to extrapolate and apply the arguments raised in its third assignment of error. *See Calhoun* at ¶ 24.

**{¶36}** In its fourth assignment of error, the City argues the jury's verdict was against the manifest weight of the evidence because Mark's testimony as to the value of the land lacked credibility and "simply [did] not make sense." This Court disagrees.

**{¶37}** As previously noted, Mark testified that the total value of the land before the take was between $800,000 and $850,000. Mark explained "there's not other property with frontage on a major state route and a busy road like we have, you can't hardly find a comparable for it, because you can't find a piece of property like that." Mark explained the City took the "very prime piece" and the "heart" of their land. Mark then opined the damages to the residue was between $350,000 to $400,000 because the value of the residue was now "probably about zero." Mark explained he did not know anyone who would buy the residue and that the City "totally ruined the property." When asked what the total amount of damages he believed he and his brother suffered as a result of the take, Mark opined it was between $800,000 and $850,000.

**{¶38}** As the co-owner of the land, Mark was competent to testify as to the value of the land. *Padgett*, 32 Ohio St.3d at 347 (1987) ("Ohio law has long recognized that an owner of either real or personal property is, by virtue of such ownership, competent to testify as to the market value of the property."). While the City argues Mark's testimony was not credible, in part, because it was inconsistent with his own appraiser's testimony, the jury was in the best position to evaluate the witnesses' testimony. *See State v. Guber*, 2024-Ohio-2846, ¶ 20 (9th Dist.) (acknowledging the jury is "in the best position to evaluate credibility and [i]s free to believe, all, none, or part of" a witness's testimony). Having reviewed the entire record, this Court cannot say this is the exceptional case in which the evidence weighed heavily against the jury's verdict. *See Croghan*, 2019-Ohio-3970, at ¶ 26 (9th Dist.). Accordingly, the City's fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR V**

**TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN DENYING MOTION FOR JUDGMENT NOT WITHSTANDING THE VERDICT.**

{¶39} In its fifth assignment of error, the City argues the trial court abused its discretion when it denied its motion for judgment notwithstanding the verdict ("JNOV"). This Court disagrees.

{¶40} "After a court enters judgment on a jury's verdict, a party may file a motion for JNOV to have the judgment set aside on grounds other than weight of the evidence or credibility of witnesses." *Morgan v. Consun Food Industries, Inc.*, 2024-Ohio-2300, ¶ 51 (9th Dist.), citing Civ.R. 50(B). "JNOV is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the non[-]moving party reasonable minds could come to but one conclusion, that being in favor of the moving party." *Morgan* at ¶ 51 (9th Dist.), quoting *McMichael v. Akron Gen. Med. Ctr.*, 2017-Ohio-7594, ¶ 10 (9th Dist.). "If reasonable minds could reach different conclusions, the motion must be denied." *McMichael* at ¶ 10, quoting *Magnum Steel & Trading, L.L.C. v. Mink*, 2013-Ohio-2431, ¶ 12 (9th Dist.). "This Court reviews a trial court's ruling on a motion for judgment notwithstanding the verdict de novo." *Tesar Indus. Contractors, Inc. v. Republic Steel*, 2018-Ohio-2089, ¶ 28 (9th Dist.).

{¶41} As noted, the City moved for JNOV on the basis that the jury ignored the evidence presented at trial, including the testimony of both appraisers, when it awarded the Standens an amount equal to the value of the entire land before the take. In its merit brief, the City supports its assignment of error with arguments this Court has already rejected. To that end, the City again argues that the jury issued an award that was not based on the testimony or evidence presented at trial, and that the jury ignored the opinions of both appraisers. The City concludes the jury

rendered a verdict based on "inflamed passions . . . as punishment to the City or a reward to the Standen[]s – not based upon any evidence."

{¶42}   This Court rejects the City's limited argument for the reasons already articulated in our resolution of the City's other assignments of error.  Thus, the City has failed to demonstrate the trial court erred when it denied its motion for JNOV.  *See State v. Mastice*, 2007-Ohio-4107, ¶ 7 (9th Dist.) ("An appellant has the burden of demonstrating error on appeal.").  The City's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR VI

**THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN DENYING THE MOTION FOR A NEW TRIAL.**

{¶43}   In its sixth assignment of error, the City argues the trial court abused its discretion when it denied its motion for a new trial.  For the following reasons, this Court overrules the City's sixth assignment of error.

{¶44}   Civ.R. 59(A) provides that a trial court can grant a new trial based upon the following nine grounds:

(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

(2) Misconduct of the jury or prevailing party;

(3) Accident or surprise which ordinary prudence could not have guarded against;

(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;

(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;

(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;

(7) The judgment is contrary to law;

(8) Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial;

(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.

"The standard of review for a trial court's ruling on a motion for new trial under Civ.R. 59(A) depends on the grounds for the motion." *Gallagher v. Fast*, 2024-Ohio-1003, ¶ 16 (9th Dist.). "For motions brought under Civ.R. 59(A)(1)-(6) and (8), a trial court's ruling 'is reviewed for * * * abuse of discretion,' whereas for motions brought under Civ.R. 59(A)(7) and (9), a trial court's ruling 'is reviewed de novo.'" *Id.*, quoting *Harrison v. Horizon Women's Healthcare, LLC*, 2019-Ohio-3528, ¶ 11 (2d Dist.).

{¶45} As noted, the City filed two motions for a new trial. In its first motion, the City argued a new trial was warranted because the jury's verdict was outside the range of both expert opinions as to the damages owed to the Standens, and the jury ignored the trial court's instructions on calculating damages. In its second motion, the City argued a new trial was warranted based on newly discovered evidence, that is, revisions to the plans/drawings for the roundabout. The City's assignment of error on appeal appears to challenge the trial court's denial of the City's first motion only.

{¶46} The City has not identified which subsection of Civ.R. 59 supports its argument, nor has the City cited any portion of the underlying record. *See* App.R. 16(A)(7). It appears the City's argument is based on Civ.R. 59(A)(4), that is, the jury's verdict was excessive and given under the influence of passion or prejudice. The City again argues the record does not support the jury's verdict because its award was "outside the scope of BOTH experts[,]" which is "an

indication that something went wrong." The City then summarily concludes there is simply no support for the jury's award in the case.

**{¶47}** This Court again rejects the City's limited argument for the reasons already articulated in our resolution of the City's other assignments of error. Thus, the City has failed to demonstrate the trial court erred when it denied its motion for a new trial. *See Mastice*, 2007-Ohio-4107, at ¶ 7 (9th Dist.) ("An appellant has the burden of demonstrating error on appeal."). The City's sixth assignment of error is overruled.

II.

**{¶48}** The City's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Probate Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JILL FLAGG LANZINGER
FOR THE COURT

HENSAL, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

BRIAN MORIARTY, Attorney at Law, for Appellant.

DENNIS O'TOOLE, Attorney at Law, for Appellee.